UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOEL TOLBERT,

              Plaintiff,

    v.

ANTIOCH POLICE DEPARTMENT, et al.,

            Defendants.

Case No. 22-cv-02026-JSC

**ORDER DENYING MOTION TO DISMISS AND MOTION TO COMPEL; DIRECTING PARTIES TO ADDRESS LOCATION OF UNSERVED DEFENDANTS**

Re: Dkt. Nos. 44, 52

### INTRODUCTION

Plaintiff, a California prisoner proceeding without being represented by an attorney, filed this civil rights complaint under 42 U.S.C. § 1983 against the Antioch Police Department ("APD")[1], APD Chief Allen Cantando, APD Officer James Colley, APD Officer James Perkinson, and the Contra Cost County Detention Health Service (CCCDHS).  Summonses issued to Defendants Cantando, Perkinson, and CCCDHS were returned by the Marshal unexecuted.  (ECF Nos. 13, 15, 16.)

Plaintiff filed a First Amended Complaint ("FAC") (ECF No. 8), and Defendants APD and Colley moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (ECF No. 26).  The motion was granted, and Plaintiff was granted further leave to amend.  (ECF No. 37.)  Plaintiff filed a timely Second Amended Complaint against the same five Defendants, which is now the operative complaint.  (ECF No. 42.)  Defendants APD and Colley[2] moved to dismiss the case for failure to state a claim upon which relief may be granted pursuant to

---

[1] Defendant APD does not contest the propriety of naming it, as opposed to the City of Antioch, as a Defendant.

[2] Unless otherwise noted, the Court's use of the term "Defendants" refers to the two served Defendants – APD and Colley.

United States District Court
Northern District of California

1    Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 44) and a request for judicial

2    notice (ECF No. 45).  Plaintiff filed an opposition (ECF No. 49), and Defendants filed a reply

3    brief (ECF No. 51).  Plaintiff also filed a motion to compel (ECF No. 52), which Defendants

4    oppose (ECF No. 53).  For the reasons discussed below, the motion to dismiss and the motion to

5    compel are DENIED.  Defendants are directed to address the location of the unserved Defendants,

6    as detailed below.

7                                               **BACKGROUND**

8         On January 28, 2015, Defendants Colley and Perkinson arrested Plaintiff at his mother's

9    house.  (ECF No. 42 at 4 ¶ 10.)  During the course of this arrest, they shot Plaintiff with a bean

10   bag, and beat, cut, suffocated, and threatened to sexually assault him despite his lack of resistance.

11   (*Id.* at 4-5 ¶ 10.)  Plaintiff alleges after his arrest he was treated at John Muir Hospital where he

12   underwent surgery.  (*Id.* at 5 ¶ 10.)  Thereafter, he was taken to the Martinez Detention Facility,

13   where his requests for medical treatment were ignored for four days.  (*Id.* at 6 ¶ 11.)  Plaintiff had

14   to use crutches for several months, and he has permanent scarring on his face, legs, and finger.

15   (*Id.* at 6-7 ¶ 11.)

16        In June 2015, resisting arrest charges against Plaintiff were dismissed following his

17   preliminary hearing.  (*Id.* at 8 ¶ 13.)  On January 30, 2019, following a jury trial, he was found

18   guilty of four "wobbler" offenses and not guilty of the remaining charges, and on February 22,

19   2019, he was sentence to "time served" and released from custody.  (*Id.* at 9 ¶ 14.)  Plaintiff was

20   "reincarcerated" on March 12, 2020.  (*Id.* at 10 ¶ 15.)

21        Plaintiff alleges Defendant APD had "widespread practices of failing to train and supervise

22   its officers in the proper constitutional use of excessive force prior to and since the use of force

23   against Plaintiff" (*id.* at 16:11-14), that the APD's "deliberate indifference" was "so persistent and

24   widespread that any civilian who comes into contact with a member of the department is likely to

25   end up severely harmed and hospitalized if not dead" (*id.* at 16:17-20), and "multiple people are

26   unlawfully killed or beaten at the hands of APD every year" (*id.* at 18:2-3).  He also alleges

27   specific instances of excessive force besides his own: two people who were killed and two others

28   who were beaten during arrests, (*id.* at 16:27-17:1, 8:19-21, 8:24-9:1, 10:17-22), three prior

United States District Court
Northern District of California

1    "cases" of unlawful shootings between 2012 and 2014 by Defendant Colley, and one unlawful

2    shooting by Perkinson had one in 2012[3] (*id.* at 11:3-10).

3         Plaintiff filed this lawsuit on March 30, 2022.  The now-operative SAC makes four claims:

4    (1) Defendants Colley and Perkinson used excessive force against him in violation of his Fourth

5    Amendment rights (*id* at 15-16 ¶18); (2) Defendant APD is liable for such use of force because it

6    was caused by the widespread practice of using excessive force on citizens who come into contact

7    with APD (*id.* at 16-17 ¶ 19); (3) Defendant Cantando (the APD Chief) "failed to adequately train,

8    supervise, and discipline Colley and Perkinson in the proper use of force which led to their use of

9    force against Plaintiff," (*id.* at 17:16-19); knew about and failed to correct the widespread use of

10   excessive force by APD officers (*id.* at 18:1-3); and failed to require officers use body-worn

11   cameras or "ensure foreign weapons were not holstered" during arrests (*id.* at 17:22-28); this "led

12   to" and "encouraged" the use of excessive force against Plaintiff (*id.* at 17:18, 18:6; *see generally*

13   *id.* at 17-18 ¶ 20); and (4) Defendant CCCDHS provided inadequate medical care in violation of

14   Plaintiff's right to due process under the Fourteenth Amendment (*id.* at 18 ¶ 21).

15        In the SAC, Plaintiff alleges he filed three government tort claims.  On May 2, 2015, he

16   filed a "claim" with the APD "on all events described herein and served on all defendants … with

17   a [sic] address to mail notice back and received no response."  (*Id.* at 8:2-6.)  "Around June 2015"

18   he filed "a claim against defendants Antioch Police Department, etc. with the Department of

19   General Service Office of Risk and Insurance Management (Government Claims Program) and

20   served a notice on Defendant A.P.D.," and he received a copy of the denial of this claim in "late

21   2015."  (*Id.* at 8:10-16.)  In July 2019, he filed "a government tort claim form against Defendant

22   Cantando, James Perkinson, James Colley, Antioch Police Department, and C.C.C.D.H.S. and

23   never received a response."  (*Id.* at 9:27-10:2.)[4]

24        Plaintiff also alleges a number of facts regarding threats by Defendants for filing suit.

25   Perkinson told him in the hospital "we can do whatever you can't sue."  (ECF No. 42 at 5-6 ¶ 10.)

26

27   [3] It is not clear whether these "cases" took place in administrative or court proceedings.
     [4] Plaintiff alleges on January 13, 2022, after being "reincarcerated," he filed an inmate
28   "grievance/appeal," but this grievance concerned his medical care in jail, not the claims against the
     moving Defendants.  (*Id.* at 10 ¶ 15; *see also* ECF No. 31 at 67.)

United States District Court
Northern District of California

After being transported to the jail, Perkinson told him, "[Y]ou can't sue until you get out which will never happen and if you did sue or even tried, we will fuck you up way worse than this and make sure that you get found guilty." (*Id.* at 7:15-19.)  This caused Plaintiff to "fear[] for his life and his family's life to file a 1983 civil rights lawsuit." (*Id.* at 7:20-21.)  He learned Colley shot a man in 2015 and other APD officers suffocated another man to death in front of his family members and "concealed eyewitness accounts," despite these suspects' lack of resistance. (*Id.* at 8:19-9:3.)  According to Plaintiff, this made him fear reprisal upon him or his family members if he sued. (*Id.* at 8:15-17, 9:4-6.)  He alleges following his release from custody in 2019, he "was pulled over by an Antioch Police Department officer and was notified that officers had knowledge of him trying to sue and threatened Plaintiff for filing." (*Id.* at 10:3-7.)  This caused Plaintiff to move away from Antioch. (*Id.* at 10:7-9.)  Plaintiff alleges he ultimately decided to file this lawsuit in March 2022 because "if defendants are going to kill him or get him life for speaking out it's going to happen anyway since he already messed up" when he "tried filing [government tort] claim[s]." (*Id.* at 10:25-29.)

Defendants move to dismiss on the grounds Plaintiff's claims are barred on their fact by the two-year statute of limitations and equitable tolling does not apply.  Defendants also argue Plaintiff has not sufficiently pled a *Monell* claim against Defendant APD for two reasons. (ECF No. 44 at 16-21.)  First, Plaintiff has not pled facts plausibly supporting an inference APD had a policy of using excessive force in violation of the Fourth Amendment because Plaintiff relies upon incidents that occurred after and are dissimilar to his case. (*Id.* at 17-20.)  Second, they argue Plaintiff has not alleged facts sufficient to plausibly support an inference any policy caused the APD officers to use excessive force against him. (*Id.* at 20-21.)

**DISCUSSION**

I.   Standard of Review

Failure to state a claim is grounds for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . . claim is and the

grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations and internal quotations omitted). Although to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007) (citations omitted). A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570.

Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.* Dismissal for failure to state a claim is a ruling on a question of law. *Parks School of Business, Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

A pleading filed by a party unrepresented by counsel must be liberally construed, and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotations and citations omitted).

II.    <u>Analysis</u>

    1.    <u>Judicial Notice of Court Records</u>

Federal Rule of Evidence 201(b) permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018). Taking judicial notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment. *Id.* A district court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal

5

quotation marks and citations omitted) (granting request to take judicial notice in § 1983 action of five prior cases in which plaintiff was a self-represented litigant, to counter her argument that she deserved special treatment because of her status).

Accordingly, the Court takes judicial notice of the certified court records submitted by Defendants. (ECF No. 45.) The certified court records establish a trial was conducted in January 2019, and Plaintiff was sentenced on February 22, 2019. (ECF No. 45-1 at 8-9.)

### 2.   Statute of Limitations and Equitable Tolling

As the Court previously ruled, given the incident occurred in January 2015, and Plaintiff did not file suit until 2022, his claims are barred by the two-year statute of limitations. (Dkt. No. 37 at 5-6.) The Court also held that due to his incarceration status, the statute of limitations was tolled until January 28, 2019. (*Id.* at 6.) So, his claims are barred by the statute of limitations unless equitable tolling applies.

California's equitable tolling rules apply to Plaintiff's section 1983 claims. *Azer v Connell*, 306 F.3d 930, 936 (9th Cir. 2002). Under California law, equitable tolling is appropriate in a later suit when an earlier suit was filed and when the record shows: "'(1) timely notice to the defendant in the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.'" *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137-38 (9th Cir. 2001) (en banc) (citing *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924 (1983)). Upon satisfying the three-pronged test, a plaintiff should be relieved from the limitations bar. *Id.* at 1140; *see*, *e.g.*, *Azer*, 306 F.3d at 936-37 (granting equitable tolling when plaintiff satisfies three-prong test and finding that by filing an official-capacity action in state court plaintiff provided individual defendants within state office adequate notice that they might be subject to a civil rights suit).

### A.   Notice

Defendants contend Plaintiff's allegations regarding the claims he included in his government tort claims show such claims were "too conclusory" to adequately notify Defendants of the claims he makes here. (ECF No. 44 at 14-15.) Under *Collier*, "the filing of the first claim

must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." 142 Cal. App. 3d at 924.  The Court is not persuaded the allegations regarding the first government tort claim he submitted to the APD in May 2015 are too conclusory to establish such notice.  Plaintiff alleges this tort claim concerned "all events described herein." (ECF No. 42 at 8:2.)  This allegation, liberally construed, means Plaintiff included all the events he alleges in the SAC, including the force used by Colley and Perkinson, the widespread practice of excessive force at APD, Cantando's actions that fostered the use of excessive force, and the inadequate medical care by CCCDHS.  To the extent this government claim included all these allegations, as Plaintiff alleges, it "alert[ed]" Defendants "of the need to begin investigating" the claims Plaintiff brings here, which is sufficient notice to be the basis for equitable tolling under *Collier*, 142 Cal. App. 3d at 924.

Defendants point to the SAC's failure to describe the claims included in Plaintiff's second and third government claims.  (ECF No. 42 at 8:10-16, 9:27-10:2.)  As Plaintiff has sufficiently alleged his first government claim provided adequate notice, however, any failure of these additional government claims to provide notice are irrelevant to the equitable tolling analysis. Defendants also argue Plaintiff failed to attach copies of the government claims to the SAC, but they "recognize" the "Court has previously addressed this [argument] in its ruling on the FAC" (*id.* at n. 4), when the Court concluded Plaintiff is not obligated to produce these documents at the pleading stage but should be allowed to try to obtain them through discovery (ECF No. 37 at 8).

Defendants also insist the third government tort claim did not provide "timely" notice because it was allegedly filed after the limitations period expired.  To be the basis for equitable tolling, a prior claim must be timely, which means filed within the limitations period.  *Collier*, 142 Cal. App. 3d at 924.  As explained in the order on the FAC, the "maximum allowed" tolling under Cal. Code Civ. Proc. § 352.1 due to Plaintiff's incarceration would extend the limitations period to January 28, 2019.  (ECF No. 37 at 6.)  Plaintiff's present pleadings and the court records indicate he was continuously incarcerated from the date of the incident until February 22, 2019.  (ECF Nos. 42 at 9 ¶ 14, 45 at 10.)  Plaintiff alleges he filed the third government tort claim several months later, in July 2019.  Defendants are therefore correct this government tort claim did not

7

1    give them timely notice of Plaintiff's claims.  This argument is moot, however, because Plaintiff's

2    first government claim, from May 2015, was undisputedly timely and, drawing all reasonable

3    inferences in Plaintiff's favor, provided Defendants notice of Plaintiff's claims before the

4    limitations period expired.

5                            B.      Prejudice

6              Defendants also argue Plaintiff has failed to allege the delay did not prejudice them

7    because the passage of "eight years . . . necessarily creates prejudice."  (ECF No. 44 at 15.)  To

8    begin with, this case was filed in March 2022, just over seven years (not eight years) after the

9    January 2015 incident, and just over three years after the statute of limitations and statutory tolling

10   expired in January 2019.  Defendants do not cite authority, nor is the Court aware of any, holding

11   equitable tolling is prohibited *as a matter of law* due to prejudice from the passage of this amount

12   of time.  Here, the SAC alleges facts plausibly supporting an inference of a lack of prejudice: in

13   October 2022, Plaintiff contacted "multiple key witnesses" and their "memories have not faded"

14   (ECF No. 42 at 11:13-16),[5] and other non-testimonial evidence, such as police reports and

15   photographs, are stored electronically (*id.* at 12:18-23).  The Court must assume at the pleading

16   stage these allegations are true, and liberally construes them to mean that police reports,

17   photographs, and court records regarding the incident can still be obtained and eyewitnesses can

18   testify and be cross-examined.  Neither Defendants' speculation that witnesses, memories, and

19   evidence "may" no longer be available, nor their circular and inaccurate argument that "eight

20   years is eight years" (ECF No. 44 at 15:2-22), persuade the Court otherwise.

21             Defendants rely on two unpublished and non-binding decisions that are readily

22   distinguishable from this case.  (*Id.* at 15-16.)  In *Lal v. Ogan*, the court inferred prejudice from

23   the passage of four and half years when the plaintiff alleged "no facts" showing (1) he pursued any

24   alternate remedy giving defendants notice of his claims prior to his filing suit, (2) defendants were

25   not prejudiced, or (3) he pursued his claims in good faith.  2019 WL 427294, at *4 (E.D. Cal. Feb.

26   4, 2019).  Here, by contrast, Plaintiff alleges facts allowing a reasonable inference he pursued a

27   _____

28   [5] Two such declarations were attached to Plaintiff's opposition to Defendants' motion for
     judgment on the pleadings.  (ECF No. 31 at 21-24.)

1    prior alternative government claim giving Defendants notice of his claims, the ordinary prejudice

2    to Defendants from the passage of time is not present, and he acted in good faith (as discussed

3    below). *McDowell v. Fox*, where the court denied equitable tolling to an older ("over ten years")

4    cause of action than Plaintiff's causes of action is similarly distinguishable because there were no

5    allegations of a prior remedy giving the defendants notice of the claims, a lack of prejudice to the

6    defendants, or good faith by the plaintiff. 2019 WL 4264380, at *4 (C.D. Cal. July 2, 2019), *aff'd*,

7    828 F. App'x 422 (9th Cir. 2020).

8         The Court concludes Plaintiff has alleged facts that plausibly support an inference of a lack

9    of prejudice to Defendants from the passage of time since Colley and Perkinson used force against

10   him.

11         C.    Good Faith

12         Defendants also argue Plaintiff has not sufficiently alleged he acted in good faith in

13   waiting so long to file this case. (ECF No. 44 at 16.) Plaintiff alleges he did not file this case

14   earlier because Defendant Perkinson threatened him with violence and a guilty verdict in his

15   criminal proceedings if he filed suit, and when Plaintiff was out of custody in 2019 another APD

16   officer threatened him if he filed suit. (ECF No. 42 at 7:15-21, 10:3-7.) Plaintiff also alleges the

17   shooting and killing of suspects in 2015 and 2016 by Defendant Colley and other APD officers in

18   front of family members and concealing eyewitness accounts substantiated his fears that harm

19   would come to him or his family if he sued. (*Id.* at 8-9 ¶ 13.) Plaintiff alleges multiple

20   discussions with family members about the dangers of these reprisals if he filed suit, finally suing

21   simply because his prior government claims already made him vulnerable to an attack. (*See*, *e.g.*,

22   *id.* at 7:28-8:1, 10:16-17, 10:24-29.) Assuming those allegations are true, it is reasonable to infer

23   Plaintiff delayed filing this lawsuit not out of a lack of diligence, but in good faith "fear[] for his

24   life and his family's life [if he were] to file a 1983 civil rights lawsuit." (*Id.* at 7:20-21.)

25   Defendants do not argue or cite any authority[6] that these alleged threats preclude a finding his

26

27   ─────────────────

     [6] The only case cited by Defendants, *Meniooh v. Humboldt Cnty.*, No. 20-CV-05634-RMI, 2021
     WL 1222491, at *4-5 (N.D. Cal. Mar. 31, 2021), did not involve any allegations of threats of
28   reprisals for suing. (ECF No. 44 at 16.)

1     delay was in good faith.  Rather, they argue the threats cannot be held against Colley because

2     Perkinson and other officers, not Colley, allegedly made them.  This argument is unpersuasive; the

3     point is Plaintiff acted in good faith in delaying because he received credible and dangerous

4     threats about filing suit, regardless of who made the threats.

5                                *                    *                    *

6           For the reasons discussed above, the SAC sufficiently alleges the elements of equitable

7     tolling, so Defendants' motion to dismiss his claims as untimely is DENIED.

8           3.     *Monell* Claim

9           Defendants next argue Plaintiff's allegations are insufficient to establish APD's liability

10    for the use of force by Perkinson and Colley.  Local governments are "persons" subject to liability

11    under 42 U.S.C. § 1983 when official policy or custom causes a constitutional tort.  *Monell v.*

12    *Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).  To impose municipal liability under § 1983 for a

13    violation of constitutional rights resulting from governmental action or omission, a plaintiff must

14    show: "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the

15    municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's

16    constitutional rights; and (4) that the policy is the moving force behind the constitutional

17    violation."  *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)

18    (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted)).

19          Defendants argue the SAC fails to adequately plead two elements of a *Monell* claim

20    against APD: that APD had a policy of excessive force or that any such policy caused Perkinson

21    and Colley to use excessive force against him.

22                A.     Municipal Policy Allegations

23          Plaintiff has sufficiently alleged APD had a policy of excessive force actionable under

24    *Monell*.  For purposes of the *Monell* analysis, an "[o]fficial municipal policy includes the

25    decisions of a government's lawmakers, the acts of its policymaking officials, and practices so

26    persistent and widespread as to practically have the force of law."  *Connick v. Thompson*, 563 U.S.

27    51, 61 (2011).  Municipal liability may be established by proving that an official with final

28    policymaking authority ratified a subordinate's unconstitutional decision or action and the basis for

United States District Court
Northern District of California

10

it. *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995).

The SAC alleges a policymaking official, APD Chief Cantando,[7] took a number of actions ratifying the use of excessive force by APD officers.  The allegations that Cantando knowingly disregarded "multiple" killings and beatings by Defendants "every year," did not discipline Colley and Perkinson or other APD officers for the use of excessive force, and allowed such officers to use "foreign" weapons and not wear body cameras during arrests support a reasonable inference Cantando ratified the use of excessive force by APD officers.  (ECF No. 42 at 17-18 ¶ 20).  So, the SAC sufficiently alleges an APD excessive force policy based upon the alleged actions of a final policymaking official.

Defendants do not address Plaintiff's ratification theory; instead, they argue the SAC fails to sufficiently allege a municipal policy arising from a failure to train and supervise APD officers. They contend that to properly allege a policy based upon the failure to train or supervise, Plaintiff must allege more than one incident of excessive force, and the additional incidents must be similar to and have occurred before the use of force on him.  (ECF No. 44 at 10-12.)  Defendants cite *Connick*, in which the Supreme Court explained that to show a municipal policy based on the failure to train, "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates" and there must be "[a] pattern of similar constitutional violations by untrained employees."  563 U.S. at 62, 63 n.7.  They also cite Ninth Circuit law providing "evidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).

The SAC meets this legal standard insofar as it sufficiently alleges additional incidents of similar constitutional violations, that is, the use of excessive force during arrest, by inadequately trained and supervised APD officers prior to the use of force against Plaintiff.  Plaintiff alleges

---

[7] State law governs whether an official is a final policymaking official for purposes of *Monell*.  *See United States v. County of Maricopa*, 889 F.3d 648, 651 (9th Cir. 2018).  In California, police chiefs, such as Cantando, are considered final policymakers for policing.  *See e.g.*, *Larez v. City of Los Angeles,* 946 F.2d 630, 645–48 (9th Cir.1991); *Fuller,* 47 F.3d at 1526.  Defendants do not assert Cantando did not have final policymaking authority over policing practices at the APD.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  APD officers inflicted "many" beatings and killings during arrest "every year," such that "any"

2  person is "likely to be" harmed by APD officers.  (ECF No. 42 at 16:17-20, 17:2, 18:2-3.)  He

3  alleges specific examples of people killed and beaten by APD officers, and the alleged prior

4  "unlawful" shootings in 2012 and 2014 by Colley and Perkinson.  (*Id.* at 11:4-10, 16:27-17:1.)

5  Even if, as Defendants argue, three of the specific examples cited by Plaintiff occurred after

6  Plaintiff's incident (ECF No. 44 at 11:25-12:2), the allegations of "many" other uses of excessive

7  force "every year," including one occurring in 2014 according to Defendants,[8] and the 2012 and

8  2014 unlawful shootings by Colley and Perkinson, support the inference of numerous instances of

9  APD officers using excessive force before Plaintiff's incident.  Defendants fault Plaintiff for

10  failing to allege the facts of the other incidents showing they were similar to Plaintiff.  But

11  Defendants cite no authority that requires a plaintiff to plead the specific facts of prior incidents to

12  sufficiently plead a *Monell* failure-to-train claim.  *Connick* requires "similar *constitutional*

13  *violations*," 563 U.S. at 62 (emphasis added), not similar factual circumstances.  The alleged

14  constitutional violation here is the use of excessive force in violation of the Fourth Amendment

15  during arrest, of which many prior instances are alleged.

16        The SAC alleges sufficient plausible facts to support the inference the APD had a policy of

17  using excessive force during arrest insofar as Cantando, a final policymaker of policing practices,

18  ratified such use of excessive force and there was a widespread pattern and practice of using it.

19  Furthermore, the SAC sufficiently alleges these policies were created by the failure to train and

20  supervise, as well as by other actions by Cantando and other APD officials.

21              B.    Causation Allegations

22        Defendants also argue Plaintiff has not sufficiently alleged the inadequate training and

23  supervision caused the violation of his rights because he has not alleged the nature of the training

24  and supervision, how it was deficient, or how such deficiency led to the use of excessive force

25  against him.  Plaintiff alleges the failure to adequately train and supervise APD officers occurred

26  both "*prior to* and after" the use of excessive force against him. (ECF No. 42 at 16:11-14

27

28  ─────────────
[8] This is the alleged use of force against Anthony Mabutas, which Defendants assert occurred in
2014.  (ECF No. 42 at 17:1; ECF No. 44 at 12:1.)

12

(emphasis added)).  He also specifically alleges the inadequate training and supervision "caused," "led to," and "encouraged" the use of force against him by Colley and Perkinson.  (*Id*. at 17:4, 17:17-19, 18:5-6.)  Furthermore, Plaintiff alleges APD and Cantando, respectively, did not adequately train and supervise its officers in the "proper use of constitutional force" and the "proper use of force" respectively (ECF No. 42 at 16:13, 17:18), which supports a reasonable inference the training and supervision was lacking in guidance as to how much force and in what circumstances the law allows.  The SAC sufficiently alleges facts plausibly showing how the lack of training and supervision by APD and Cantando caused the violation of Plaintiff's constitutional rights.

*          *          *

Drawing all reasonable inferences from the allegations in Plaintiff's favor, Plaintiff has sufficiently alleged both the existence of a policy of excessive force during arrest at APD and that such policy caused the use of excessive force against Plaintiff.  Accordingly, Defendants' motion to dismiss the *Monell* claim under Rule 12(b)(6) must be DENIED.

### III.    Motion to Compel

Plaintiff has filed his third motion to compel the production of documents.  (ECF Nos. 32, 34, 52.)  The prior two motions were denied because Plaintiff did not certify that he had in good faith discussed or attempted to discuss with Defendants his outstanding discovery requests to try to obtain the discovery without a motion, as required by Rule 37(a)(1) of the Federal Rules of Civil Procedure.  (ECF Nos. 33, 50.)  The current motion asserts Plaintiff has made a good faith effort to meet and confer because he called defense counsel and left a message for him.  (ECF No. 53 at 3:25.)  Defense counsel submits a declaration stating he returned Plaintiff's voicemail at the number received and left a message with the person who answered, but Plaintiff never called him back.  (ECF. No. 54 ¶ 3.)  Plaintiff does not refute this statement.  Leaving one voicemail and failing to return defense counsel's return call does not constitute a "good faith" effort.  Plaintiff makes a brief and unexplained reference to "formal letters" in his motion (ECF No. 52 at 3:25), but this does not show a good faith effort, either because he does not describe what he included in such letters, indicate when he sent them, attach copies of them, or submit a sworn statement that

13

United States District Court
Northern District of California

1
2
3

he sent such letters to defense counsel (the motion to compel is unverified).  The motion to compel must once again be denied because Plaintiff has not satisfied the "good faith" effort to meet and confer required by Rule 37(a)(1).

4
5
6
7
8
9
10

The motion to compel must be denied for another reason as well: Plaintiff has not served the requests for documents upon Defendants, which he must do.  *See* Fed. R. Civ. P. 5(a)(1)(C), 34(b)(2)(A).  Defendants indicate they were not served with the requests (ECF No. 52 at 3:17), and Plaintiff has not shown proof of such service.  He filed the discovery requests with the Court, but no proof of service is attached, and they were filed ten days before Defendants appeared in this case.  (ECF No. 17.)  Furthermore, discovery requests must not be filed with the Court; instead, Plaintiff must serve any discovery requests upon Defendants or defense counsel.

11

**IV.    Unserved Defendants**

12
13
14
15
16

As noted, Defendants Cantando, Perkinson, and CCCDHS have not been served.  The Marshal returned the summonses upon them unexecuted because Cantando and Perkinson have retired from the APD, where Plaintiff indicated they could be served, and CCCDHS is not at the address Plaintiff provided.  (ECF Nos. 13, 15, 16.)  Plaintiff has not provided the Court with new addresses for serving these Defendants.

17
18
19
20

Plaintiff has an obligation to provide the Defendant's correct address for service, even though he is indigent and entitled under the PLRA to have the Marshal perform such service without charge.  He must also complete service within 120 days of filing the complaint.  Fed. R. Civ. P. 4(m). Well more than 120 days have passed since the complaint was filed.

21
22
23
24

Plaintiff has requested to have Defendant APD provide the last known addresses of Perkinson and Cantando to the Court under seal for purposes of service.  (ECF No. 55.)  On or before December 15, 2023, Defendants shall inform the Court whether they have any objections to doing so, and if they do, on what grounds.

25
26
27

On or before December 29, 2023, Plaintiff shall provide the Court with a current address for Defendant CCCDHS to allow for service.  Failure to do so will result in dismissal of the claims against CCCDHS without prejudice.

28

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the reasons stated above:

Defendants' motion to dismiss (ECF No. 44) and Plaintiff's motion to compel (ECF No. 52) are DENIED.  The parties shall comply with the above dates with respect to the unserved Defendants.

After the above service issues regarding the unserved Defendants are addressed, the Court will schedule briefing on summary judgment motions.

This order resolves of ECF Nos. 44 and 52.

**IT IS SO ORDERED.**

Dated: November 22, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge